**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240140-U

Order filed June 24, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| JULIO MONTENEGRO, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0140 |
| | ) | Circuit Nos. 17-L-985 & 17-CH-2080 |
| | ) | |
| RUBEN FRANCHINI, | ) | Honorable |
| | ) | Jeffrey Tuminello |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice Brennan and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The trial court properly denied a turnover order because the judgment creditor failed to establish the judgment debtor possessed the property sought to be delivered. Affirmed.

¶ 2    Defendant, Ruben Franchini, appeals from a judgment entered in a citation proceeding. He challenges the trial court's denial of his motion for a turnover order. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4        This case began as a dispute over ownership of a hand-carved wooden motorcycle that was on display at defendant's laundromat. Plaintiff, Julio Montenegro, brought an action against defendant for conversion and a temporary restraining order. The trial court granted the temporary restraining order. The wooden motorcycle was then destroyed in plaintiff's garage. Defendant filed a counterclaim for conversion and intentional damage to the wooden motorcycle. A bench trial was held in April 2018, and the trial court issued its order in June, finding defendant was the rightful owner and awarding a judgment. The trial court believed punitive damages were appropriate and gave defendant leave to file a fee petition. Plaintiff then filed bankruptcy, which stayed these proceedings. In December 2019, the bankruptcy court found the judgment and punitive damages were nondischargeable.

¶ 5        In April 2021, the trial court awarded defendant $45,000 in punitive damages.

¶ 6        In June 2021, plaintiff was involved in a motorcycle accident. He filed a property damage claim with his insurance company, Country Preferred Insurance Company (Country Financial).

¶ 7        On August 2, 2021, defendant commenced citation proceedings to collect the punitive damages judgment by serving plaintiff with a citation to discover assets. On August 4, Country Financial mailed a letter to plaintiff. The letter informed plaintiff that Country Financial had "mailed a supplemental payment of $21,955 to BMK Fabrications for additional repairs" to plaintiff's motorcycle. At the time, plaintiff was operating BMK Fabrications, a repair shop, as a sole proprietorship. Plaintiff received the check, personally endorsed it, and, on August 12, attempted to deposit it into his bank account, which was labeled, "Julio A Montenegro Sole Prop DBA Alex Electric & Maintenance." The bank did not accept the deposit. A bank statement for the account shows the funds were posted but removed the same day as a bank "adjustment/correction." On August 30, plaintiff filed articles of organization for BMK

Fabrications, LLC, with the Secretary of State. He listed himself as manager and his home address as the principal place of business. BMK Fabrications, LLC's, September 2021 checking account statement shows a $100 deposit funding transfer on September 2 and a $10,000 counter credit on September 8. The statement does not reflect a $21,955 deposit.

¶ 8　　In May 2023, defendant moved for a turnover order and discovery regarding BMK Fabrications, LLC. Defendant amended the motion in July, arguing plaintiff was obligated to disclose BMK Fabrications, LLC,'s existence and banking activity after August 2, 2021, the citation's date of service. Defendant further argued "[t]hat the opening of [an] LLC by [plaintiff] just 28 days after being served with the Citation to Discover Assets, coupled with his failure to disclose the existence of BMK Fabrications, LLC, its bank account, or the origin or ultimate destination of the $21,955.00 warrants the entry of a Turnover Order." In his request for relief, he asked for an order "[r]equiring Plaintiff *** to turn over to Defendant *** the sum of $21,955."

¶ 9　　In September 2023, the court held an evidentiary hearing on defendant's amended motion. Plaintiff was the only witness to testify. He acknowledged Country Financial mailed the supplemental payment to BMK Fabrications. He testified BMK Fabrications was a repair shop that he operated as a sole proprietorship and that he personally worked to repair his motorcycle. He believed BMK Fabrications was created in 2018.[1] He did not organize BMK Fabrications as a limited liability company until August 30, 2021, after defendant had served the citation. Plaintiff signed the check individually in his own name but said he had to sign it because he was BMK Fabrications's "manager." He tried to deposit the check from Country Financial into the bank account for the Julio Montenegro Sole Proprietorship d/b/a Alex Electric and Maintenance. The

_____

[1]Counsel asked plaintiff, "When was BMK Fabrications created in any capacity as a sole proprietorship or LLC?"

deposit was rejected because the check had to be deposited into a BMK Fabrications account. He did not remember when, but at some point after the deposit was rejected, he deposited the funds into the BMK Fabrications, LLC, account, and he used those funds to buy parts to repair the motorcycle. He did not get paid for his work because the insurance funds were used only for parts, not for labor. At the time of the hearing, the motorcycle was still not completely repaired. Before repairs, the damaged motorcycle was appraised at $5,500. There was no updated appraisal.

¶ 10　　　　Defendant argued the insurance company issued the check to plaintiff as the owner of the company that repaired the motorcycle, and it was "all just a convenient roundabout to avoid trying to pay [defendant] on this punitive damage judgment." Plaintiff argued the insurance proceeds could not be diverted for use other than repairs to the motorcycle. In October 2023, the trial court denied defendant's amended motion for turnover. The court noted it heard arguments on the motion and "judged the credibility of the witnesses."

¶ 11　　　　Defendant moved to reconsider, maintaining that plaintiff was required to turn over $21,955 under section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2022)). Turnover was required, he argued, because plaintiff had possession of the insurance check after being served with the citation, when he "physically received [the check] in the mail and took it to the bank, endorsed it and deposited it.". Plaintiff argued turning over the insurance check would be "judiciously imposed insurance fraud," and would violate both the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 2022)) and plaintiff's insurance policy. The trial court denied the motion to reconsider, noting the insurance proceeds could not be redirected to satisfy the punitive damages judgment.

¶ 12　　　　Defendant appeals.

¶ 13　　　　　　　　　　　　　　　II. ANALYSIS

¶ 14    On appeal, defendant contends the trial court erred in denying his amended motion for turnover order and his motion to reconsider. He argues when plaintiff personally endorsed the check and deposited it into his bank account, plaintiff obtained possession and was the holder of the check. Moreover, defendant argues, he had perfected the citation lien on all funds in the possession of or subsequently acquired by plaintiff, which included the $21,955 check.

¶ 15    Plaintiff did not file an appellee brief. That alone, however, does not entitle defendant to a reversal. See *First Capitol Mortgage Corp. v. Talandis Construction Co.*, 63 Ill. 2d 128, 131 (1976) ("[T]he judgment of a trial court should not be reversed *pro forma* for the appellee's failure to file its brief" because "[a] considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal."). In such cases, a reviewing court may (1) serve as an advocate for the appellee and decide the case when justice requires, (2) decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record. *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009). Here, the record is simple, and the issues can be decided without the aid of an appellee's brief.

¶ 16    When, as here, the trial court has heard testimony and made findings, its decision to grant or deny a turnover order is reviewed for an abuse of discretion. *R&J Construction Supply Co., Inc. v. Adamusik*, 2017 IL App (1st) 160778, ¶ 9. "[W]e may affirm the trial court for any reason supported by the record, regardless of the particular basis relied upon by the trial court." *In re Marriage of Benson*, 2015 IL App (4th) 140682, ¶ 22.

¶ 17    A judgment creditor is authorized to issue citations to discover assets as a means to identify the judgment debtor's nonexempt assets. 735 ILCS 5/2-1402(a) (West 2022). These assets can then be applied toward the satisfaction of the unpaid judgment. *Id.* "Section 2-1402 is to be

liberally construed, and the statute gives the trial court broad powers to compel the application of discovered assets or income to satisfy a judgment." *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958 (2009).

¶ 18     "The only relevant inquiries in a [citation] proceeding are (1) whether the judgment debtor possesses assets that should be applied to satisfy the judgment, and (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Gataric v. Colak*, 2016 IL App (1st) 151281, ¶ 15. When nonexempt assets are discovered, the court may enter a turnover order that compels "the judgment debtor to deliver up *** money in his or her possession or control, so discovered, capable of delivery and to which his or her title or right of possession is not substantially disputed." 735 ILCS 5/2-1402(c)(1) (West 2022). It is the burden of the judgment creditor to prove the citation respondent possesses assets of the judgment debtor. *R&J Construction*, 2017 IL App (1st) 160778, ¶ 14.

¶ 19     Defendant focuses on whether the insurance proceeds were subject to the citation. See *Stonecrafters,* 393 Ill. App. 3d at 959 ("[I]nsurance proceeds are a potential asset of the debtor-insured and are subject to citation proceedings."). However, defendant's request for a turnover order fails for a more fundamental reason: he failed to offer proof that plaintiff was in actual possession of the $21,955 he sought to be turned over.

¶ 20     The evidence at the hearing established that plaintiff attempted to deposit the funds into his personal bank account. The bank rejected the deposit and corrected the account. No evidence established what happened to those funds after August 12. Plaintiff did not testify that he possessed the check or still held its funds, either as cash or on deposit. No bank records showed any transactions relating to the insurance check other than the first rejected deposit. Instead, the

6

evidence established plaintiff was no longer in possession of the insurance proceeds because he had purchased motorcycle parts with the funds.

¶ 21        Defendant, as the judgment creditor, had the burden to establish plaintiff was in possession of the property that he asked to be turned over to him. See 735 ILCS 5/2-1402(c)(1) (West 2022); *R&J Construction*, 2017 IL App (1st) 160778, ¶ 14. Because defendant failed to prove plaintiff possessed the check or the $21,995 at the time of the hearing, the court did not abuse its discretion by denying his motion for a turnover order. Simply put, there was no "$21,955.00" to turnover.

¶ 22                                III. CONCLUSION

¶ 23        The judgment of the circuit court of Will County is affirmed.

¶ 24        Affirmed.